UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOBENON LIGGANS,

        Plaintiff,

                                                        Case No. 10-11921

v.                                                      Honorable Julian Abele Cook, Jr.

THIRD JUDICIAL CIRCUIT COURT, and NANCY
DONAHUE, BRIDGETT TYUS, PAMELA GRIFFIN
and JOSEPH SCHEWE, in their official and individual
capacities,

        Defendants.

## ORDER

This wrongful termination lawsuit was initiated by the Plaintiff, Lobenon Liggans, who has accused the Defendants[1] of, *inter alia*, breaching the parties' express and implied contracts, violating the terms of their constructive contract, wrongfully discharging him from his employment as a municipal worker, and, in so doing, depriving him of his fundamental rights to receive due process under the law in violation of 42 U.S.C. § 1983 and Article I § 17 of the Michigan Constitution of 1963.[2] On May 12, 2010, the Defendants removed the lawsuit to this Court on the basis of its original jurisdiction over the Plaintiff's federal due process claims. *See generally*, 28 U.S.C. §§ 1331, 1441(a).

---

[1] The Defendants have been identified by the Plaintiff as the Third Judicial Circuit Court, Nancy Donahue, Bridgett Tyus, Pamela Griffin and Joseph Schewe, all of whom are collectively referred hereinafter as "the Defendants."

[2] In his complaint, the Plaintiff asserts that his claims against the individual Defendants are limited to those issues which pertain to the deprivation of his rights to process under the state and federal constitutions.

1

The parties have now filed cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56(c), both of which are currently before this Court for its evaluation.

I.

This case arises out of the Plaintiff's twenty-one year employment tenure with the Third Judicial Circuit Court of Michigan ("Third Circuit"). According to his complaint, the Plaintiff served most recently as an Information Specialist II within the Family Division of the Third Circuit where he was generally assigned to work with Referee Lynn Ruhlman.[3] While employed by the Third Circuit, he was a member of the American Federation of State, County and Municipal Employees, Council 25 and its Affiliated Local 3309 ("AFSCME"). As a union member, the terms of his employment were governed by a collective bargaining agreement ("CBA") which expired on September 30, 2007.

II

According to the complaint and while the parties were in the process of negotiating a successor agreement, all of the mandatory subjects for bargaining remained in place pending a final resolution of the negotiation process. However, it should be noted that some of the provisions within the CBA are relevant to this dispute. First, in keeping with the "just cause" provisions of the CBA, the parties have agreed that disciplinary action may be imposed upon errant union members only "for [their] failure to fulfill [their] job responsibilities or for improper conduct while on the job . . . ." (CBA at 14, Article 11, Section 1(A)). Second, the CBA provided for progressive discipline

---

[3]During all of the times that are relevant to this litigation, the individually named Defendants were also employees of the Third Circuit; namely, Nancy Donahue worked as a senior referee and as one of the Plaintiff's supervisors; Bridgett Tyus also supervised the Plaintiff's work; Pamela Griffin was the Human Resources Director; and Joseph Schewe served as the acting Friend of the Court.

which included the imposition of an oral reprimand, a written reprimand, and a suspension of work duties prior to discharge. (CBA at 15, Article 11, Section 2(B)). According to the CBA, the Third Circuit, as the employer, was authorized to take "immediate and appropriate disciplinary action" against an employee if it was required by the circumstances, so long as it gave proper written notice to the union. (CBA at 14, Article 11, Section 1(B)). Third, the CBA contained a five-step grievance procedure which included, *inter alia*:

(1)  Step 1: a meeting between a management representative and the employee and/or his or her union representative to discuss and attempt to orally resolve the complaint;

(2)  Step 2: the delivery of a written grievance to a management representative;

(3)  Step 3: the conveyance of the written grievance directly to the employer or its designee;

(4)  Step 4: the transmission of the grievance to the Executive Court Administrator and the holding of a meeting which, "is not intended to be a formal hearing, but merely an opportunity for the parties to exchange information, and engage in frank discussion in an effort to resolve the grievance,"[4] and

(5)  Step 5: the submission of unresolved grievances to arbitration.

The Plaintiff contends that the Third Circuit unilaterally cancelled the Step 5 provision within the arbitration procedure. However, he acknowledges that all other aspects of the disciplinary process, as outlined in the CBA, have remained the same. In essence, it is his contention that he was terminated without just cause, in violation of the CBA, and contrary to the existing federal and state law. The Plaintiff also submits that he first learned of his discipline on January 24, 2008 after being

---

[4]The CBA also provides that in those cases which pertain to issues involving suspension or discharge at Step 4, either party may request the production of evidence in the possession of the other party which is intended for use in subsequent proceedings, including witnesses. (CBA at 10, Article 7, Section 2(B)). The CBA also requires the parties to make a good faith effort to produce such evidence.

invited by electronic mail to attend a Step 3 discipline conference which was scheduled to be held on the same day. He maintains that the Third Circuit, after ignoring the first two steps of the regular grievance procedure, moved immediately to Step 3. Moreover, the Plaintiff asserts that he participated in the Step 3 conference with the assistance of his union representative, Shawndrica Simmons. The Plaintiff alleges that he was given very little explanation of the Defendants' positions in the dispute. However, the Defendants reject this characterization, asserting that they specifically leveled three types of misconduct which served as the basis for the imposition of the discipline against the Plaintiff; namely, tardiness, unsatisfactory work performance, and falsifying official court documents.[5] Pointing to these misdeeds, the Defendants imposed (1) a five-day suspension (effective on January 25, 2008) for his attendance and poor work performance, (2) a subsequent one-day suspension for additional poor work performance (effective on February 1, 2008), and (3) the termination of his employment (effective on February 4, 2008).

The most serious and, probably, the most sharply disputed claim of misconduct that was raised during the Step 3 conference pertained to the Defendants' claim that the Plaintiff had falsified court records. These allegations stem from his interaction with another Defendant, Referee Nancy Donahue, on November 12, 2007. On that day, Donahue handled the docket of Referee Lynn Ruhlman, to whom the Plaintiff typically reported. According to him, it was Donahue's practice to complete a Referee Recommendation and Order ("RRO") after each hearing, sign the document immediately thereafter, and transmit it to the Plaintiff for processing. In turn, it was the Plaintiff's responsibility to place each RRO into Third Circuit's computer system and mail a copy of the

---

[5]The Plaintiff asserts that three of the Defendants (Tyus, Donahue, and Schewe) were present during the Step 3 meeting.

document to the litigants.  The Defendants contend that, at some point, two attorneys contacted Donahue to inquire about the status of her decisions on November 12, 2007. Deducing that these counsel had not received the RROs, Donahue asked another Defendant, Bridgett Tyus, to conduct an investigation into the matter as the Plaintiff's supervisor.  According to the Defendants, Tyus' investigation revealed the following information:

- Donahue issued thirteen (13) RROs on November 12, 2007, some of which were signed on the same date, while others were processed three days later,

- The Plaintiff received the RROs from Donahue on two different days;

- Each of the RROs bore the Plaintiff's signature which indicated that he had mailed the RROs to the litigants on November 27, 2007;

- Contrary to a Third Circuit policy, which required the Plaintiff to enter the RRO information into the Michigan Child Support Enforcement Network data base within one to two weeks of the hearing, he did not do so until (1) December 20, 2007 for seven of the thirteen RROs that had been issued on November 12th, and (2) December 21, 2007 for the other six RRO's that had been issued by Donahue on November 12, 2007 ;

- The Plaintiff's Michigan Child Support Enforcement Network data base entries indicated that he had mailed a copy of all twelve of Donahue's RROs on two separate occasions; namely, November 27, 2007 and December 20, 2007; and

- Despite a requirement that the Plaintiff enter the RRO information into Third Circuit's official electronic court record within one to two weeks of the hearing, he neglected to do so until December 17, 2007.

According to the Defendants, the foregoing information led them to conclude that the

5

Plaintiff had not mailed the RROs on November 27, 2007, contrary to the representation in his proofs of service. They claim that, given the implications for the litigants' rights,[6] and based on the seriousness of the alleged offense, Donahue and Schewe concluded that the termination of the Plaintiff's job was warranted.

The Plaintiff disagrees, insisting that the RROs were mailed on the dates listed. While admitting to being backlogged to some extent on his database entries, the Plaintiff asserts that - unlike the Defendants' overall assertions - he received only one telephone call from a litigant who had not received an RRO from a November 12, 2007 hearing.

After receiving a Step 3 meeting where he learned the nature of the Defendant's allegations, the Plaintiff sought and obtained a Step 4 hearing before another Defendant, Pamela Griffin, the Director of Human Resources for Third Circuit.[7] Ultimately, in a letter dated March 25, 2008, Griffin upheld the decision of the Plaintiff's supervisors to terminate him for unsatisfactory work performance.

According to the Defendants, the union's request for arbitration of the Plaintiff's grievance in accordance with Step 5 of the CBA was denied by Griffin who had concluded that his request for a Step 5 hearing was invalid because of the expiration of the CBA. Nevertheless, the Plaintiff argues that if the Step 5 hearing had been conducted, the parties would have had a right to call and examine

---

[6]According to the Defendants, parties have twenty-one days to object to an RRO, but because of the Plaintiff's conduct, it was unclear to them whether or when the parties actually received the court documents.

[7]He was accompanied at this hearing by his union representative, Craig Tindle, and the union president, Shawndrica Simmons. The Defendants were represented by Schewe, Tyus, and Donahue.

witnesses, and to have the dispute adjudicated before a third-party who lacks ties to the union or management. Thus, it is his belief that without this option, he was deprived of a post-termination hearing before a neutral third-party. To support his assertion, the Plaintiff points to statements (1) by Griffin that the Third Circuit had not created an alternative process for employees in the absence of arbitration, and (2) by Schewe that he was never given an opportunity for a hearing before a neutral decision-maker who was not affiliated with management or the union.

## II.

The parties have filed cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56(c), with each side proclaiming that there are no genuine issues of a material fact, which entitle them to a judgment as a matter of law. Under this standard, a motion for the entry of a summary judgment should be granted if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." The burden is upon each movant to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In assessing a motion for summary judgment, the Court must examine the pleadings, the depositions, the answers to the interrogatories, the admissions, and the affidavits in a light that is most favorable to the nonmoving side. Fed. R. Civ. P. 56(c); *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). It is the responsibility of the court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, a summary judgment must be entered only if (1) the evidence clearly suggests that the contested

7

matter is "so one-sided that [the proponent] must prevail as a matter of law," *id.* at 252, or (2) the opponent fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. It is of significance to note that the presentation of a mere scintilla of supporting evidence is insufficient to justify the entry of a summary judgment. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

II.

In their dispositive motion, the Defendants initially argue that they are entitled to a judgment as a matter of law on the Plaintiff's breach of contract and wrongful discharge theories, inasmuch as they had a legitimate basis to terminate him. The question of whether the termination of the Plaintiff's employment was a breach of the just-cause termination provisions of the CBA is a task for the trier of fact as long as there is a genuine factual dispute. *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 620-621, 292 N.W.2d 880 (1980). The central question here is thus whether, after giving the Plaintiff the benefit of every doubt, reasonable minds could differ over the issue of whether his conduct amounted to a failure to fulfill his job responsibilities or constituted improper conduct while on the job.

Based on its review of the record, the Court believes the entry of a summary judgment is unwarranted. The Defendants rest their argument on evidence of the Plaintiff's alleged malfeasance in (1) failing to timely docket and notify the parties of the RROs, and (2) purportedly falsifying court records as a cover-up for his misdeeds. Yet, the evidence in the record is conflicting as to when and whether the RROs were mailed by the Plaintiff. On one hand, the Defendants posit that (1) the unsworn representations from two attorneys, both of whom complained about not having received

8

certain court orders, (2) the mailing of duplicate copies of the November 12th RROs on December 20, 2007 without explanation, and (3) the existence of questionable computer entries by Liggans all provide "strong evidence" that the Plaintiff engaged in a cover up and cast serious and justifiable doubt on his credibility.

As to the first category of evidence, the Court agrees with the Plaintiff that the use of the unsworn statements from two the attorneys amounts to classic hearsay, which cannot be used to defeat a summary judgment motion. Fed. R. Evid. 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); *see also Alexander v. CareSource*, 576 F.3d 551, 558-59 (6th Cir. 2009) ("evidence submitted in opposition to a motion for summary judgment must be admissible. That is why [h]earsay evidence . . . must be disregarded.") (internal citations omitted).

Turning to the second category of evidence relating to the Plaintiff's unclear computer entries and the unexplained transmittal of duplicate copies of the November 12th RROs, the Court is not persuaded that a reasonable trier of the facts could only interpret this set of information as evidence of the Plaintiff's dishonesty and/or an attempt by him to cover his own tracks. The defendant offered no concrete evidence of falsification, and while the absence of clear record-keeping and plausible explanations about his conduct may cast doubt on the strength of the Plaintiff's claims, it is not the prerogative of the Court to assess the merits of the non-movant's case. To the extent that a trier of the fact might question whether the Plaintiff had a valid reason for his conduct (and thus, ultimately, was fired for good cause), the Court finds that the granting of the Defendants' request for a summary judgment on the bases of counts I (breach of contract) and IV (wrongful discharge) would be improper.

Next, the Defendants seek the entry of a summary judgment on the Plaintiff's due process claim. In order to prevail on this issue, the Plaintiff must show that, as a municipal employee with a constitutionally protected property interest in employment, he was discharged without being granted (1) an oral or a written notice of the charges against him, (2) an explanation of the employer's evidence against him, or (3) an opportunity to present his side of the story on the contested issues. *Molina-Crespo v. U.S. Merit Systems Protection Bd.*, 547 F.3d 651, 661 (6th Cir. 2008) (citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 546 (1985)). Here, there is no dispute that the Plaintiff was a municipal employee who was entitled to receive at least "rudimentary due process," before being terminated, which requires notice as well as an opportunity to be heard. *Casad v. City of Jackson* 79 Mich. App. 573, 577-578 (1977).

The main point of contention here is whether the Plaintiff received an evidentiary hearing before a neutral third party prior to being fired. On this issue, the Plaintiff correctly notes that a hearing before an unbiased and impartial decision-maker is a basic requirement of due process. *Crampton v. Michigan Dept. of State,* 395 Mich. 347, 351 (1975). Moreover, in certain instances, the impartiality of a decision maker may be questioned, especially if, for instance, it has (1) a pecuniary interest in the outcome, (2) been the target of personal abuse or criticism from the party before him, (3) been enmeshed in (other) matters involving the aggrieved party, or (4) may have prejudged the case because of a prior participation as an accuser, an investigator, a fact finder or an initial decision-maker. *Id.* Nevertheless, it is clear that the law does not entitle an employee to an impartial judge at the pretermination "right-of-reply" hearing. *Duchesne v. Williams*, 849 F.2d 1004, 1006 (6th Cir. 1988). Thus, the inquiry here must turn to whether Griffin was adequately impartial during her handling of the Plaintiff's Step 4 process.

Upon its review of the record, the Court is not persuaded that the Plaintiff has presented sufficient evidence to show that Griffin necessarily falls into any of the above-cited *Crampton* criteria or was otherwise incapable of serving as a neutral decisionmaker.  At best, the Plaintiff has proffered only speculation about Griffin's lack of partiality and inability to render a fair and impartial decision because she was an employee of the Defendant.  The Court reaches this conclusion notwithstanding (1) Griffin's statements that she would doubt the impartiality of a union representative who served as a decision-maker if the roles were to be reversed, (2)  her observation that Liggans never went to arbitration, and (3) the comments by Griffin and Schewe that Griffin generally represents management at Step 4 hearings and did so at Liggans' hearing.  None of this evidence shows –for instance – that Griffin held a financial interest which presented an irreconcilable conflict, or that she would have otherwise felt compelled to act in the interests of the Defendant solely because it was also her employer.  In the opinion of the Court, the evidence to date provides an insufficient grounds upon which to show that Griffin carried a bias or was otherwise incapable of being neutral and disinterested with regard to Liggans.

Nevertheless, the Court will deny the Defendant's request for the entry of a summary judgment on his due process claim, inasmuch as it is not clear from the record that the Plaintiff received a constitutionally adequate post-termination hearing.  This issue is "inextricably intertwined" with the sufficiency of any pre-termination hearing received by the Plaintiff at Step 3.  *Carter v. Western Reserve Psychiatric Habilitation Center*  767 F.2d 270, 273 (6th Cir. 1985) ("Where, as here, a court has approved an abbreviated pre-termination hearing, due process requires that a discharged employee's post-termination hearing be substantially more 'meaningful.' At a minimum, this standard requires that the discharged employee be permitted to attend the hearing,

11

to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him."). Viewing the record in a light most favorable to him, there is evidence to suggest that the Plaintiff received an abbreviated Step 3 hearing, since he received notice of it on the same day, had no advance notice of the allegations, was presented with the accusations in a manner that was informal (having taken place in the context of a "discussion"), and the decision to terminate him had essentially already been made. Under these circumstances, a reasonable trier of the facts may accordingly question the adequacy of the process that the Plaintiff received in his Step 4 meeting, which was required to be "substantially more meaningful" in light of *Carter, supra.* The Defendants are thus not entitled to a judgment on this issue as a matter of law.

On the other hand and notwithstanding the foregoing analysis, the Court finds that the Defendant is entitled to the entry of a summary judgment on the Plaintiff's claims for implied and constructive contracts. In order to recover on the basis of an implied contract, there must be "(1) parties competent to contract; (2) a proper subject matter; (3) consideration; (4) mutuality of agreement; and (5) mutuality of obligation." *Mallory v. Detroit*, 181 Mich.App. 121 (1989). Nevertheless, it is well-settled that where there is an actual contract in place, a contract implied in law which governs the same issues cannot survive. *Scholz v. Montgomery Ward & Co.*, 437 Mich. 83, 93 (1991) ("[a]n implied contract cannot be enforced where the parties have made an express contract covering the same subject matter."). Here, the Defendants concedes that the Plaintiff's employment was governed by the terms of the CBA, and the mandatory subjects of bargaining - including its just cause provisions - remained in tact and governs the dispute between the parties notwithstanding the CBA's expiration. (Defendants' Summary Judgment Motion at 10). The

Plaintiff does not challenge this point, and indeed, presents no argument to the contrary in his response. Inasmuch as the Plaintiff cannot - as a matter of law - prevail on his implied contract claim in light of the CBA, the Defendants' request for the entry of a summary judgment on this issue must be, and therefore is, granted.

### III.

The Plaintiff has also filed a motion for the partial entry of a summary judgment on his due process claim. The primary basis for his request is that, inasmuch as he did not have a post-termination hearing, the Step 4 process was inadequate because of Griffin's status as a Third Circuit employee, which, in his opinion, deprived him of the right to have the issues resolved by a neutral and impartial decision-maker.

Yet, for the reasons which have been expressed above, the Court believes the Plaintiff's request for dispositive relief is without merit. Although it is true that due process demands that an adjudicator be unbiased, *In re Murchison*, 349 U.S. 133, 136 (1955), the Plaintiff has not persuaded the Court that there is no genuine issue of a material fact as to whether Griffin was actually biased or carried an appearance of partiality in favor of management. *Id.* In fact, the record is far from clear on this issue, and there is a sufficient amount of evidence from which a reasonable trier of the facts could conclude that Griffin acted impartially and was merely carrying out her required functions as the Human Resources Director according to the terms of the CBA.

The Plaintiff maintains that the neutrality of Griffin, as the Step 4 administrator, was critical inasmuch as he did not have a Step 5 hearing. It is his position that if the Step 5 hearing not been terminated, his grievance could have been submitted to an arbitrator for a final and binding decision. The Plaintiff submits that he would have been satisfied with this procedure, given what he perceives

13

as the right to call and cross-examine witnesses and to have the dispute adjudicated by someone who not affiliated with the union or management . On this issue, the Plaintiff is correct when he notes, as indicated above, that an abbreviated pre-termination hearing could, in some instances, require a more meaningful set of post-termination procedures. *See Mitchell v. Fankhauser,* 375 F.3d 477, 479 -481 (6th Cir. 2004) (noting that post-termination hearings "serve to ferret out bias, pretext, deception and corruption by the employer in discharging the employee," and citing *Carter,* supra at 273 for the proposition that a substantially more meaningful post-termination hearing "requires that the discharged employee be permitted to attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to . . . have an opportunity to challenge the evidence against him.")). Yet, there record here is not clear-cut in favor either party on this issue. In the Court's judgment, there is enough evidence in the record for a fact-finder to conclude that the combination of the Plaintiff's Step 3 and Step 4 meetings were sufficient to satisfy due process requirements, given (1) Third Circuit's oral notice to him of the charges, (2) the presence of union representatives on his behalf who responded to the charges, (3) the opportunity for Liggans to present evidence or call witnesses (even if he chose not to do so), and (4) the opportunity for Liggans to generally challenge the evidence submitted by the Defendants against him. Because the record does not support the Plaintiff's request for the entry of a summary judgment as a matter of law, his motion must be, and is, denied.

## IV.

Therefore, for the reasons that have been stated above, the Defendants' request for the entry of a summary judgment is denied, excepting therefrom their request for a judgment on the implied and constructive contract claims, which is granted. The Plaintiff's cross-motion for a summary

14

judgment on his due process claim is denied.

    IT IS SO ORDERED.


Date: August 30, 2011            s/Julian Abele Cook, Jr.
                                         JULIAN ABELE COOK, JR.
                                         U.S. District Court Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 30, 2011

                                           s/ Kay Doaks
                                           Case Manager